IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADAM BROWN,

        Plaintiff,                                No. 2:15-cv-01109-HZ

      v.

CAROLYN W. COLVIN,                        OPINION & ORDER
Acting Commissioner of Social Security,

        Defendant.

Merrill Schneider
P.O. Box 14490
Portland, Oregon 97293

        Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

///

1 - OPINION & ORDER

Kathryn Miller
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of General Counsel
Social Security Administration
701 S.W. Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

       Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Adam Brown brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on August 23, 2011, alleging an onset date of January 1, 2004. Tr. 142-47. His application was denied initially and on reconsideration. Tr. 59, 73. On August 14, 2013, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge (ALJ). Tr. 30-59. On September 11, 2013, the ALJ found Plaintiff not disabled. Tr. 14-29. The Appeals Council denied review. 1-5.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on having back issues, memory issues, a past head injury, and difficulty reading and writing. Tr. 60, 157. At the time of the hearing, he was thirty-five years old. Tr. 142. He has completed the eleventh grade and has no past relevant work. Tr. 38-39, 23.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses a five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant

is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his application date. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of depressive disorder NOS, borderline intellectual functioning, speech disorder, probable reading and mathematics learning disorder, and mechanical back pain, but that the impairments do not meet or equal, either singly or in combination, a listed impairment. Tr. 18-20.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform medium work, except Plaintiff can perform only simple instructions, procedures, and tasks, requires verbal instructions, and can have no more than casual and superficial interactions with co-workers to limit distractions and the impacts of Plaintiff's speech impediment. Tr. 20. With this RFC, the ALJ determined, at step five, that Plaintiff is able to perform jobs that exist in significant numbers in the national economy such as vehicle cleaner, hand packager, and scrap sorter. Tr. 24.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff argues that the ALJ (1) improperly discounted Plaintiff's credibility regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms; (2) improperly considered third-party lay witness statements; and (3) improperly rejected the opinion of Dr. Geoffrey Bartol, Ph.D who performed Plaintiff's consultative psychodiagnostic examination. As a result of the ALJ's errors, Plaintiff argues that the ALJ's decision to deny Plaintiff benefits is unsupported by substantial evidence. Plaintiff asks this Court to reverse and remand the ALJ's decision for a full and fair consideration. Because I agree with Plaintiff that the ALJ improperly discounted Plaintiff's credibility and that the ALJ failed to properly consider third-party statements, I reverse and remand the ALJ's decision for further consideration.

5 - OPINION & ORDER

...

**I. Brown's Credibility**

Plaintiff argues that the ALJ improperly made a negative credibility determination because the ALJ failed to specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). An ALJ analyzes the credibility of a claimant's testimony in two steps. Lingenfelter, 504 F.3d at 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotation marks omitted). "The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (internal quotation marks omitted). Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject her testimony about the severity of her symptoms only by offering specific, "clear and convincing reasons" for doing so. Id. (internal quotation marks omitted).

A court cannot review an ALJ's credibility finding "if the ALJ fails to specify his or her reasons for finding [the claimant's] testimony not credible." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015). An ALJ's reasoning must be "sufficiently specific," and "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. at 493. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." Id. at 495.

Simply stating a conclusory negative credibility finding and then summarizing evidence from the record is "not the sort of explanation or the kind of 'specific reason' [the court] must

have in order to review the ALJ's decision meaningfully." Id. at 494. The court "cannot discern the agency's path [if] the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the claimant's] testimony non-credible." Id. This, in turn, would require the Court to substitute its own conclusions for the ALJ's regarding which evidence points to a negative credibility determination or to "speculate as to the grounds for the ALJ's conclusion," neither of which the court may do. Id. Because the court cannot meaningfully review an ALJ's non-credibility determination under the circumstances described above, an ALJ's failure to "provide specific reasons for the finding on credibility," and instead providing only a conclusory statement that does not identify specific non-credible testimony along with the evidence in the record that undermines that testimony, constitutes harmful error that requires, if nothing else, reversal and remand for further proceedings.

Turning to the case at hand, the ALJ's entire negative credibility determination consists of a single conclusory statement: "the claimant's statements . . . are not entirely credible for the reasons explained in this decision." Tr. 21. The ALJ never expressly points to specific testimony to support his negative credibility finding, let alone to evidence in the record that undermines Plaintiff's testimony. Instead, the ALJ states his negative credibility finding and then proceeds immediately to a discussion of third-party statements and medical evidence without providing any concrete reasons for the credibility finding. See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014) (finding error when an ALJ's decision states a conclusory negative credibility finding and then "drifts into a discussion of the medical evidence [while providing] no *reasons* for the credibility determination.").

The government points to references in the ALJ's decision that arguably support a negative credibility determination, including Plaintiff's daily activities, Plaintiff's prior work

7 - OPINION & ORDER

experience, and possible discrepancies regarding Plaintiff's history of alcohol consumption. But those references are randomly dispersed throughout the decision, and the ALJ completely failed to indicate that those, or any other references, undermined Plaintiff's credibility or otherwise supported a negative credibility determination. See id. In fact, the ALJ did not mention Plaintiff's credibility a single time after stating his initial negative credibility finding. In order to affirm the ALJ's decision, I would be forced to impermissibly draw conclusions from the ALJ's opinion, or to substitute my own conclusions regarding what testimony and what evidence undermines Plaintiff's credibility. Brown-Hunter, 806 F.3d at 494. I therefore find that the ALJ's failure to adequately justify his negative credibility determination constitutes reversible error.

## II. Third-Party Statements

During the disability benefits application process, Plaintiff submitted third-party lay witness statements from four individuals familiar with Plaintiff's limitations in support of his disability claim. Four of the five third-party statements are at issue in this case.[1] The first two statements are from Plaintiff's sister, Brenda Brown, who submitted statements in 2011 and 2013. The two statements together mention a wide range of impairments, including back pain, learning disabilities that make it difficult or impossible for Plaintiff to read or write, ability to follow only clearly explained verbal instructions, a speech impairment, social anxiety, trouble focusing and paying attention, inability to manage finances, and difficulty getting along with others. The statements also note that Plaintiff is able to go for walks and bike rides, helps with chores, can count change given adequate time, and can cook for himself.

The next statement is from Plaintiff's friend, Lindsay Brown. Lindsay Brown describes helping Plaintiff find a job in "firewatching" and another at a wrecking yard, but that Plaintiff

---

[1] Plaintiff did not to take issue with the ALJ's treatment of the statement submitted by Julia Brown, Plaintiff's mother.

was quickly fired from both. Lindsay Brown states that Plaintiff needs to be told "over and over what needs to be done," and references Plaintiff's "speech problems" and his inability to "do even the basic things." Tr. 213. Finally, the statement describes Plaintiff's problems with understanding or following simple instructions, and notes that Lindsay Brown has seen no improvement in Plaintiff's condition over many years.

The last statement is from Plaintiff's friend, Douglas Brown. The statement describes Plaintiff as "mentally challenged" and "drifty." Tr. 215. The statement also to Plaintiff's difficulty staying focused and need for regular retraining in simple tasks. While the statement notes that Plaintiff is able to stack wood without supervision, Douglas Brown believes that Plaintiff will be forever unable to support himself or provide the basics needed for his own survival.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss each third-party statement individually so long as the ALJ provides germane reasons for disregarding similar testimony by different witnesses. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). Germane reasons to discount lay witness testimony include "where the lay testimony is similar to other testimony that the ALJ validly discounted or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." Id. At 1119.

In this case, the ALJ first summarized Brenda Brown's statements from both 2011 and 2013. Summarizing the former, the ALJ highlighted the references to Plaintiff's back pain, Plaintiff's daily activities including self-care, cooking, bike riding, housework, and grocery

9 - OPINION & ORDER

shopping, Plaintiff's ability to follow only verbal instructions, and Plaintiff's struggle to manage finances. Summarizing Brenda Brown's 2013 statement, the ALJ highlighted the references to Plaintiff's speech impediment and anxiety in public and group settings. Next, the ALJ noted Lindsay Brown's description of Plaintiff's inability to keep a job and Plaintiff's great difficulty with following even simple instructions. Finally, the ALJ noted Douglas Brown's comment that Plaintiff worked hard but had difficulty focusing and required close supervision to keep Plaintiff on task, as well as the comment that Plaintiff could not support himself.

Immediately following these summaries, the ALJ implicitly discounted the statements, stating that "[t]he statements are generally consistent concerning difficulty in social settings and obtaining work but [do not] support a finding that the claimant would be unable to sustain simple work as described in the [RFC]." The ALJ went on to note that Plaintiff's speech impediment did not seem especially severe. Plaintiff contends that the ALJ failed to adequately address the limitations described in the third-party statements.

Plaintiff first argues that the ALJ erred by failing to ascribe weight to the third-party statements. ALJs, however, are not required to assign specific weight to third-party lay witness statements; the applicable regulations and case law require only that the ALJ must take those statements into account or provide germane reasons for discounting or rejecting the statements. See 20 C.F.R. § 404.1545(a)(3), 20 C.F.R. § 416.945(a)(3) (2012) (the ALJ "will . . . consider descriptions and observations of [a claimant's] impairment(s) . . . provided by . . . family, neighbors, friends, or other persons."); Molina, 674 F.3d at 1114 (holding that an ALJ must "comment" on third-party lay witness statements and provide "germane reasons" for rejecting those statements, but making no reference to an ALJ's obligation to ascribe "weight" to those statements); Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006) (explaining that "the ALJ

10 - OPINION & ORDER

was required to consider and comment upon [third-party lay witness statements]" but making no reference to an ALJ's obligation to ascribe "weight" to those statements).

This stands in contrast to the regulations regarding medical opinion testimony, to which the ALJ must ascribe particular weight. See 20 C.F.R. § 404.1527(e)(2)(ii) (2012), 20 C.F.R. § 416.927(e)(2)(ii) (2012) ("[T]he [ALJ] must explain in the decision the weight given to . . . any [medical] opinions from treating sources [and] nontreating sources."); Rivera v. Colvin, No. 15-1917, 2016 WL 3452743, at *8 (C.D. Cal. June 22, 2016) ("In assessing the medical opinion evidence, the ALJ must explain the weight afforded to each opinion."). The ALJ in this case did not err when he discussed the third-party statements without ascribing any particular weight to those statements.

Plaintiff next argues that the ALJ effectively rejected the third-party statements because the ALJ failed to discuss "whether the limitations described [in the statements] were accounted for in Plaintiff's RFC." Pl.'s Opening Brief at 6. While an ALJ can reject or discount, in whole or in part, third-party statements, the ALJ is required to provide "germane reasons" for doing so. Lewis, 236 F.3d at 511. This the ALJ did not do. Instead, the ALJ simply determined that the statements, in the aggregate, "[do not] support a finding that the claimant would be unable to sustain simple work as described in the [RFC]." Tr. 22. This kind of sweepingly generalized treatment fails to satisfy the "germane reasons" standard for discounting or rejecting third-party statements. See Molina, 674 F.3d at 1114-15. ("[T]he ALJ stated that the rationale for her credibility determination included reference to the third-party statements submitted in support of the claimant. This statement establishes that the ALJ reviewed the lay witness testimony in the record, but it does not provide a reason for discounting the testimony. . . . Under our rule that lay witness testimony cannot be disregarded without comment, the ALJ erred in failing to explain

11 - OPINION & ORDER

her reasons for disregarding the lay witness testimony, either individually or in the aggregate.") (internal quotation marks omitted).

The government insists that the ALJ adequately addressed the 2011 and 2013 statements provided by Brenda Brown because the ALJ impliedly discounted the statement based on inconsistencies in the two statements regarding the severity of Plaintiff's symptoms. While the ALJ's decision briefly summarizes Brenda Brown's two statements, the decision fails to highlight significant discrepancies between them. Moreover, the only impairment described in Brenda Brown's statements that the ALJ discusses in any detail is Plaintiff's speech impediment. The ALJ determined that the speech impediment did not seem especially pronounced at Plaintiff's hearing but that the impediment, along with Plaintiff's anxiety and depression, "is accepted to have some impact on social functioning." Tr. 22. Why the ALJ singled out this single impairment for further discussion is unclear. But, in any event, discussing one limitation among the many described in Brenda Brown's statements does not absolve the ALJ of his responsibility to provide germane reasons for concluding that Brenda Brown's statements fail to support Plaintiff's disability claim.

The government also contends that the ALJ adequately addressed the statements provided by Lindsay Brown and Douglas Brown because the ALJ found those statements "vague and not particularly probative." But no such language, or anything approximating that sentiment, appears in the ALJ's decision. The ALJ briefly summarized Lindsay Brown's and Douglas Brown's statements but failed to comment on the impairments they described or to discuss why those statements fail to support a finding that Plaintiff is disabled.[2] Again, the ALJ, without analysis or

---

[2] In fact, the ALJ's summary includes one comment in particular from Lindsay Brown's statement ("'[Plaintiff] can't do even the basic things' or follow 'even the easy direction'") that directly refutes the ALJ's conclusion that the statements do not support a finding that Plaintiff is "unable to sustain simple work." See Tr. 22. The ALJ makes no attempt to explain why the comment is either not credible or fails to contradict Plaintiff's RFC.

12 - OPINION & ORDER

explication, asserted only that the statements, in the aggregate, do not support a finding that Plaintiff is unable to sustain the kind of work described in the RFC.

Finally, the government would have the Court infer from the structure and content of the ALJ's summary of the third-party statements that the ALJ based his decision regarding those statements on sufficiently germane reasons. While I may, under the right circumstances, draw inferences from an ALJ's less-than-crystalline reasoning, Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989), the reasoning in the decision in this case is too scant to adequately infer how the ALJ actually determined that the third-party statements fail to support Plaintiff's disability claim.

The ALJ committed clear error with his cursory treatment of the third-party statements submitted in support of Plaintiff's disability claim. See Molina, 674 F.3d at 1114 ("lay witness testimony cannot be disregarded without comment") (internal quotation marks omitted). The next inquiry is whether the ALJ's error was harmless. An error is harmless if it is "inconsequential to the ultimate nondisability determination." Id. at 1115. In the context of an ALJ's inadequate treatment of third-party statements, an error is inconsequential if "the lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." Id. at 1117. An ALJ's inadequate treatment of third-party statements is not harmless, by contrast, if the ALJ "has not validly rejected the claimant's . . . testimony," because "the [third-party] testimony (if credited by the ALJ) would alter the ALJ's disability determination. Id. at 1116.

While the third-party statements in this case may not have described limitations beyond what the Plaintiff himself described, I have already explained that the ALJ did not make a legally

13 - OPINION & ORDER

sufficient credibility determination with regard to Plaintiff's own testimony, and, therefore, I cannot say with confidence that the ALJ's failure to adequately address the third-party statements was "inconsequential to the ultimate nondisability determination." See Molina, 674 F.3d at 1115; Strutz v. Colvin, No. 14-807, 2015 WL 4727459, at *11 (D. Or. Aug. 10, 2015) ("[T]he ALJ did not already provide germane reasons for rejecting similar testimony to that provided by [a lay witness] regarding [the claimant's limitations]. Accordingly, the Molina 'rule' does not apply. Thus, the ALJ has not provided a germane reason for discounting [the lay witness] testimony."). The ALJ's conclusory treatment of the third-party statements submitted in support of Plaintiff's disability claim constitutes reversible error.

### III. Dr. Bartol's Opinion

Plaintiff argues that the ALJ committed reversible error by rejecting a portion of the opinion of examining psychologist Dr. Geoffrey Bartol, Ph.D without providing clear and convincing evidence to explain that rejection. See Lester v. Charter, 81 F.3d 821, 830-31 (9th Cir. 1996) ("[T]he opinion of an examining doctor . . . can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."). Specifically, Plaintiff argues that (1) the ALJ "effectively rejected" a portion of Dr. Bartol's opinion because the ALJ did not explicitly account for Dr. Bartol's findings regarding Plaintiff's persistence and concentration limits in the RFC; and (2) the ALJ failed to explain the weight given to Dr. Bartol's opinion. For the reasons explained below, I agree that the ALJ erred in both respects.

Dr. Bartol examined Plaintiff on January 1, 2012. Tr. 222. In his psychodiagnostic assessment, Dr. Bartol made a number of observations regarding Plaintiff's various impairments. Id. at 222-28.  Dr. Bartol ultimately concluded that he "could see Plaintiff qualifying" for the following diagnoses: depressive disorder NOS, alcohol dependence, borderline intellectual

functioning, mild mental retardation, phonological disorder, reading and mathematics disorder, and disorder of written expression. Tr. 228. Dr. Bartol commented on Plaintiff's poor physical health, probable depression, borderline intellectual functioning, and slight speech impairment. Tr. 227-28. Dr. Bartol also noted that Plaintiff's attention, concentration, short-term memory, abstract reasoning, judgment, and ability to perform simple calculations were all poor. Tr. 225-26. Regarding "work related activities," Dr. Bartol opined that Plaintiff is able to remember and understand short, simple instructions, although Plaintiff would have difficulty following more complicated instructions. Tr. 226. In addition, Dr. Bartol found that Plaintiff has moderate-to-significant "problems sustaining concentration and attention and persisting in a task" due to Plaintiff's borderline intellectual functioning, and that Plaintiff has moderate-to-significant impairment in his "ability to engage in . . . social interactions" due to social anxiety and borderline intellectual functioning. Id.

The ALJ failed to indicate whether he was adopting or rejecting, either in full or in part, Dr. Bartol's opinion. While the ALJ should have been more explicit in that respect, it is apparent from the RFC's limitation to "short and simple tasks" with only "verbal instructions" and "no more than casual and superficial interactions with the public and coworkers" that the ALJ intended largely to adopt Dr. Bartol's findings. Nevertheless, the RFC makes no mention of, and therefore fails to adequately capture, Dr. Bartol's findings regarding concentration, attention, and persistence. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."); Lee v. Colvin, 80 F.Supp.3d 1137, 1150 (D. Or. 2015) ("To capture restrictions [to concentration, persistence, and pace], the ALJ's findings must be consistent with the restrictions

15 - OPINION & ORDER

supported in the medical testimony."). The ALJ effectively ignored limitations identified by Dr. Bartol that the ALJ has not adequately discredited in order to justify the absence of those limitations from the RFC. See Lubin v. Comm'r, 507 Fed.Appx. 709, 712 (9th Cir. 2013) (finding that the ALJ erred by accepting, based on medical evidence, that the claimant had limitations as to concentration, persistence, or pace and then failing to include such limitations in the RFC); Brink v. Comm'r, 343 F. App'x 211, 212 (9th Cir. 2009) ("The Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace [identified by medical evidence] is not persuasive.").

Concentration, attention, and persistence limits are distinct from complexity limits or the amount of social interaction that the Plaintiff can handle. The ALJ's failure to incorporate Plaintiff's concentration, attention, and persistence limits as described by Dr. Bartol into the RFC is reversible error and requires remand for further consideration. Saucedo v. Colvin, No. 12-2289, 2014 WL 4631225, at *17 (D. Or. Sept. 15, 2014) ("The ALJ must include all restrictions in the [RFC] determination [including] limitations in concentration, persistence, or pace") (citing Lubin, 507 Fed.Appx. at 712); Juarez v. Colvin, No. 13-2506, 2014 WL 1155408, at *7 (C.D. Cal. Mar. 20, 2014) (holding that, given medical evidence of moderate limitations in concentration, persistence, and pace, "the ALJ's RFC determination should have included not only the limitation to unskilled work, but also a moderate limitation in maintaining concentration, persistence, and pace").

Finally, Plaintiff contends that the ALJ erred by failing to explain the weight given to Dr. Bartol's opinion. Regulations governing an ALJ's analysis of medical opinions suggest that an ALJ must expressly ascribe weight to those opinions. 20 C.F.R. § 404.1527(e)(2)(ii) (2012), 20 C.F.R. § 416.927(e)(2)(ii) (2012) ("[T]he [ALJ] must explain in the decision the weight given to

. . . any opinions from treating [and] nontreating [medical] sources."). See Winschel v. Comm'r, 631 F.3d 1176, 1179 (11th Cir. 2011) ("[An] ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."); Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) ("Neither the ALJ nor the Appeals Council indicated the weight given to the various medical reports submitted by the appellant. We therefore remand . . . with instructions . . . to indicate explicitly the weight accorded to the various medical reports in the record."); Rivera, 2016 WL 3452743, at *8 ("In assessing the medical opinion evidence, the ALJ must explain the weight afforded to each opinion.").

The ALJ in this case erred by failing to ascribe particular weight to Dr. Bartol's opinion. As noted above, the ALJ does not even indicate whether he fully accepts and adopts Dr. Bartol's findings, let alone the significance of those findings to the RFC. As a result, this Court cannot review the ALJ's conclusions. The appropriate remedy in this situation is remand for further consideration with instructions to indicate explicitly the weight accorded to Dr. Bartol's opinion, including the limits that Dr. Bartol noted to Plaintiff's concentration, persistence, and attention.

## CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this \_\_10\_\_ day of August 2016

Marco A. Hernandez
United States District Judge

17 - OPINION & ORDER